Onexia Argument M. Ratty v. Clark Co. School District Good morning, Your Honor. May it please the Honorable Court, I am Victor Perry, the attorney for the appellant, Dean Ratty. This appeal raises important issues under the Family Medical to a 12-week leave to care for a family member who has a serious medical condition. His mother can be denied to him, resulting in the employee losing employment, in spite of the employer's failure to notify the employee of the consequences of the failure to provide a certificate of service, signed by a treating physician, where the employer admittedly also notified the employee that he may proceed with applying for leave under the Family Medical and Leave Act. Did the employee leave with the school district a change of address, a fax number, a telephone number, a cell phone number, a contact number at his place of residence? The testimony of Mr. Ratty was that he did, in fact, have in his records a contact. He had a legal representative who was not a lawyer, not necessarily totally familiar with the Act, and not terribly familiar with his own personnel record. Yes. That's foreign on his behalf with the school district, right? Mr. Sowden, the union representative. Basically, the plaintiff just packed up and hauled off, and not give and or fire leave in terms of keeping a line of communication open with the school district. And when he got notices, he got lackadaisical about it, and he got around to them sooner or later. The only trouble is it was later, right? Well, no, Your Honor. He did notify the school district. He had communications with the secretary or office manager, as Mr. Stevens testified to. Mr. Ratty testified he spoke directly to Mr. Stevens in the early part of January of 2002. He did notify Mr. Sowden to act as his liaison. His testimony was the fact that the school district records, to his understanding, said in case of emergency to contact his mother, and he had informed Mr. Stevens that it was his mother who he was taking the leave for to care for. So they had in their records that address for the mother. That was Mr. Ratty's testimony. Mr. Ratty essentially believed that everything was copacetic because he sent back the certificate of health care provider, but he made a good faith mistake. He signed it believing that that he was a health care provider. And as a layperson, that's understandable. You see, notices were going back and forth, and they had a short fuse on them. That's an issue. Well, he went beyond the time in responding to several of them. One got lost, and one didn't even catch up with him until after the date had expired. He was sent by Ms. Landeros a letter January 8th saying that it doesn't mention in the letter at all a certificate of health care provider. It just says you've got to return these documents by January 25th. Now that's not 15 days from receipt. And they knew he was in Florida. They knew there was unusual circumstances here, special circumstances, logistical problems with mail and everything else that would make it difficult for him to respond, and they sent it to his Henderson address. Were they having a hurricane down there? No, Your Honor. Not that I'm aware of. Was there a special mail problem different than anyplace else in the country? I mean, so far as I know of Florida, except when they're having hurricanes. Right. I mean, not to make light of it, but they do get it down there on some regularity, but except for those situations, mail to Florida is as sure and secure as mail to Arizona or to Portland or to Otome or something. There's nothing special about Florida, right? And they did manage to communicate with him. They did manage to send him a form. Yes. And he made certainly one really dumb mistake. Yes. I mean, you know... He did make a dumb mistake. To... What? Because he wasn't just listing himself as the health care provider. I mean, he left out blank sections that obviously had to be filled out by a doctor. If you read the form of any kind of care, it would tell you that you need to be adopted for that. Nothing that they gave him specified that the health care provider had to be adopted. Nothing defined a health care provider. The sheet that they attached referred to a health care provider license in the state of Nevada, which would, you know, literally be out of the question. It wouldn't even be applicable because we're talking about doctors in the state of Florida. This would alert him that there's a problem. He couldn't see a health care provider in Nevada. Did he ask the supervisor at the school district, who was sending out these forms, what in the world this form was all about? He did nothing. He just undertakes on his own motion to fill it in as best he can and get around to send it back late. But then the school district, it notified him in a letter, January 25th, that the consequences that they said he had until February 4th, which is less than 10 days to respond, and they notified him that the consequence of his failure to respond by February 4th is that the matter would be referred to his administrator for action. They violated the law. The law is clear that they had to notify him that the consequence would be termination if that was their intent. Isn't that sort of like being sent to the principal? The teacher says, you know, if you don't behave, I'll send you to the principal. And you know that's never a good thing. Yes, Your Honor. It may not be a good thing. You know, if you don't answer this form, we're going to send it to the administrator. But it indicates that it's the administrator, the principal, who's going to decide what the punishment is, if any. And any student knows that, that ultimately, if a teacher says, you're caught in the hall, and you're not supposed to be going to the bathroom, you go to see the principal, it's going to be the principal's decision whether or not any action is taken. It's not going to be the guy that sent him there. And that's what their notice indicated. That we're leaving this up to the administrator, and then you have the testimony, the principal. Administrator, principal, the same thing. I mean, it's clear that's what they meant by administrator. There's no question about that in the record. Then you have the testimony of the principal himself, Emilio Fernandez, that in regards to the record of personnel notification on February 20, 2002, that we were giving him the chance to provide the documentation, provide adequate proof. And the only documentation that still needed to be provided was the certificate of health care provider. And it was provided within five days of that, by February 25, 2002. They made the decision, they said in the February 20, 2002 letter, that you still have not provided adequate documentation. What does that mean? You still have not? That means you still can. They put in the letter that you have three options. Either resign, or you apply for and obtain a medical leave of absence, or you return to work. And Timothy Stevens, the assistant principal who prepared that record of personnel notification, said that he could still apply under the Family Medical Leave Act. That's his testimony's deposition. That's a waiver. You can waive a statute of limitations, even if Mr. Ratty was not on the ball at all times. The school district, going back to January 25, made consistent representations to him that it would be the administrator who would make the final decision here. That's even in the February 12 letter that Mr. Ratty never received. And they knew by then his address. And they can't say that he cut off his Family Medical Leave Act by a letter that he never received, and when it came back to him and they knew it. There's definite questions here of equitable tolling and waiver that deserve a trial. They're questions of fact. They made the intentional decision, a relinquishment of an unknown right, if they thought he had to be exactly, and this had to be done by February 4, 2002, and they couldn't tell him afterwards that he still could apply. Let me ask you this. Assume we were to buy off all of your arguments about the timing. They write to him and they give him another chance, so we've got your equitable tolling. But that only gets you so far. As far as I know, as far as this has to reflect, your client never did come back and try to go back to work. And I am a little bit puzzled what that means. If he could have simply shown up and would have been welcome to go back to work, then no harm, no foul. Whatever happened is water under the bridge. If, on the other hand, it appears the difficulty with his mother was going to be lifelong, and I don't know what her life expectancy is, but we hope it's a long life expectancy. If he never got in a position where he could get away and leave her alone to take care of, to come back to work, then again there's no harm, no foul, because he would have long feared the 12 weeks of FMLA leave that we would have gotten. Anyway, I don't see sort of an endgame for you. Even if we buy off all of the equitable tolling arguments, even if we say they have to take the brunt of all the mistakes and misunderstandings, where's your endgame? I'm not sure this – I'm trying to answer your question. I think this does, Your Honor. Dean Ratty was notified. Why don't you start by answering something very simple. Did he ever show back up for work? No, he didn't. On March 4, 2002, he received a letter from Mr. Hafen. And by the way, the letter did not say in any way that the healthcare provider certificate from Dr. Skinner was in any manner inadequate or incomplete. But that notified him that he was going to be potentially terminated. He received a letter March 8, 2002, from the Clark County head of the school, Mr. Garcia, telling him that he was going to be potentially terminated. He was notified by the union that he was being – was a recommendation for his suspension and termination. And at that point, I don't believe he thought he could just return to the school district after he'd been – received notification from Mr. Garcia. But the fact is he didn't return. I'm sorry, Your Honor. The fact is he did not return. That's true. That is the fact. He did not return. Counsel, at page 3 of your brief, line 25, you refer to Mrs. Ratty having a stint, S-T-I-N-T. What is that? I think it's a stunt, isn't it? A stunt? A stunt, S-T-E-N-T. S-T-E-N-T. I'm sorry. It sounds very serious. She has two of them. They're near the heart. I happen to have one, and I've been practicing as a judge for five years since I've had mine. I have no trouble with it. I don't need medical attention. I didn't need medical attention for about two weeks after I had the operation. I was up and walking in the morning after. Yes, Your Honor. It's not a serious medical condition that this guy had to deal with. No other? I don't know what it said in the medical certificate, but if you can't get it right in the brief, it just sounds to me like he's got all kinds of problems. Yes, Your Honor. Thank you, Your Honor. Please report Bruce Young on behalf of the Clark County School District. Thank you, Your Honor. Are there any questions that the court would want my client to address, or would you just like me to address the issues that have been raised? Well, you know, you got your February 20th equitable tolling. If I read the record, in the position the question was asked, so you were notifying Mr. Raffi as of February 20th he may proceed with applying for and seeking to be granted a leave of absence, correct? Answer, correct. And was that included, a leave of absence under the Family Relief Act? Yes, sir. So it seems to me that all that stuff that's happened before doesn't much matter because you've actually got what looks to me like equitable stoppage as of February 20th. Well, Your Honor. Am I misleading the record? Actually, the individual who testified to this was the vice principal who does not have the authority to administer the FMLA. It's not his decision. I'm sure that when you argue that to the jury, the jury will believe you. But whether or not he has the real authority or the parent authority, it really doesn't matter for purposes of summary judgment. He was a school official. He could be seen as speaking on behalf of the school. So, you know, it seems to me that for purposes of summary judgment, I mean you can argue, you can spend your time arguing, but it seems to me you're pretty much giving away the game on equitable tolling. Now, you could argue, you could try to argue we don't have an opinion that says equitable tolling applies in the FMLA context and we ought to create a split in the service circuit on this issue. But, again, you'd be wasting your time. My suggestion is that you start with February 20th and show us how, assuming equitable tolling as of February 20th, how you still survive summary judgment or how you still survive summary judgment or are entitled to summary judgment. The issues that had already been established were that the FMLA leave had been denied as of February 12th. That was established. Well, but you've got your official that at least creates a tribal issue of fact for equitable tolling that you were giving him another chance. He says, yes, we were giving you another chance to comply, coming out of the mouth of your guy. So, you know, you can burn up the time if you want to, but I think it's going to be very difficult to persuade me, at least, that when your guy in the position says, yes, we're giving you another chance to comply, that everything had been done a week or later. I mean, at least I would think that this is the kind of dispute that the jury would have to resolve. I'm sure when you get before that jury and you say Mr. Vice Principal was talking through his hat, they're going to believe you because you're very persuasive. But at least I think we need to give our opposing counsel a chance to make an opposite argument. So, assuming this is the case, and I know this is a sad set of facts for you to try to assume, but in the remaining six and a half minutes you've got left, pick up this February 20th. Assume that at that point you did indeed give him another chance to comply with FMLA, to get the form in, and tell me how you get some adjustments at that point. This issue was not addressed by the court when it made its decision. However, there was a point that was brought up with regard to the adequacy of the actual medical certification that was provided by the health care provider that was received by the school district on the 25th of February. That particular medical certification form was not accepted by the school district on the basis that there was not sufficient information contained in that document. That's certainly true, and the FMLA regulations do allow you to ask for additional information and give an opportunity to cure. But they are not fatal. The fact that you don't get enough information to be satisfied nearly sets up the employer's right to ask for more information. It does not kill the claim. So tell me what happened next. So on the 25th you asked for more information? No, Your Honor, that is not what happened. Okay. So then you get something. It's not adequate. You fail to exercise your right, which you have on the FMLA, to ask for more information. Where does that leave us? This was actually the second time that he had had an opportunity to return. So five days earlier you have conceded that you gave him another chance to comply. So you are starting with an unpleasant premise that I have put to you, which you just simply have to accept for purposes of future further answers. Okay. So February 20th your guy says, we gave him extra time. Okay. We have to assume here on settlement judgment that the jury will believe that to be the gospel truth and will hold your client to this clear unauthorized statement made by the lowly vice principal. But nevertheless, the juries are what they are. They really will hold the district to that. So as of February 20th you give him another chance. Five days later you get a letter that in judgment of your client is not good enough, which gives your client a chance to say, tell me more. Does your client say, tell me more? No. There's nothing in the record that indicates that. So at that point, why don't you at that point lose? At that point, since you didn't exercise your right given to you by statute to ask for more, why don't we have to deem the letter that you came in with, 26, as being enough? Because had it not been enough, you would have asked for more, as you went on to do. And this is from the standpoint of the waiver issue that was brought in the appeal. Is that my understanding? Because the issues that were brought on appeal were fairly narrow, and they addressed other aspects of the claim rather than this aspect of it. It was not my understanding that that was what Mr. Ratty was actually complaining about was not having received this additional opportunity to provide information, but rather that he hadn't received sufficient time and then a sufficient time to cure prior to that. And I think those ---- You may have provided his brief too narrowly. Excuse me? You may have provided his brief too narrowly. Okay. With that assumption that we have made that if we were to assume that the February 20th notification on a form that has wrote form language that's required by statute and by the collective bargaining agreement is some sort of second opportunity for Mr. Ratty to come forward. Can you use the words of your client? From the deposition. Yes. So you will notify Mr. Ratty as of February 20th he may proceed with applying and seeking to be granted a leave of absence. Correct. And that includes a leave of absence on the family leave act, right? Yes, sir. Assuming that, you know, you take a cold form and you breathe warm life into it by the words of your guy. It doesn't look so good, does it? What that individual testified to he testified to. What the actual situation that occurred at the time was that the FMLA leave had previously been denied as of the 12th. But you understand that things like that get sorted out in front of the jury. Normally. You can call him a fool or whatever, unauthorized or, you know. But we can't do that. The issue was whether he had been improperly denied any rights under the FMLA. Well, but you agree with me, believe it or not, that the employer can equitably toll the period. The statute is subject to equitably tolling. Certainly the employer can waive. There's nothing required about the time limits, right? It can waive. And in addition to waiving, the employer can engage in conduct that is on top of equitably tolling. Unless it were to create a conflict of interest. I mean, we don't have any law on this point. I think it would be highly anomalous to say that we're going to create a conflict of interest. What eventually resulted was that Mr. Ratty received the full benefit of the FMLA leave and then refused to return to work. He had those opportunities. And he wrote a very interesting letter to the superintendent where he referred to him in a condescending manner as amigo and. He's a what? Amigo. Mr. Garcia is a Hispanic superintendent. And Mr. Ratty wrote back a letter saying amigos because Mr. Fernandez, the principal, is also Hispanic. He said basically you can talk to my lawyers and I'm amused by the blatant misspellings. And he misspelled blatant in his. In other words, Mr. Mr. Ratty was not attempting in any way to really work with the school district to provide any information to the school district. I think what you've raised is an interesting point. If it was clear that he could come back and reclaim his job and then he didn't, then of course it's his bad. But it's not clear to me that as of end of February he would have seen the appointment coming back. Was there anything sent to him saying, look, if you just walk in here, everything, you know, you will be able to safely and effortlessly leave. You are entitled to come back in. Your job is waiting for you. Well, the same February 20th notice told him that he had the option of returning to work, that he could return to work. That was one of his options. He could return to work or he could obtain a leave of absence. There are numerous other leaves of absence that are available to teachers pursuant to the contract and the policies of the school district. One of them had been previously discussed by the record contained information in the deposition, that he had discussed what is called like a catastrophic leave that you can have that you can get up to a year. He had considered that, but he hadn't made any attempt to submit the paperwork for that. The only paperwork he submitted was for the FMLA leave, which was properly denied based on his failure to use reasonable and diligent efforts to get the medical certification form in. Thank you. Your time is up. All right. I'm going to just address what was. Your time is up, too. Yes, Your Honor. Thank you, Your Honor. Would you have a moment to take 30 seconds? Absolutely. Please. 30 seconds. Thank you, Your Honor. Counsel referred to the record below as far as the opposition motion for summary judgment and the hearing. It's very clear from the plaintiff's opposition motion for summary judgment that we raised the issues of waiver, estoppel, in the opposition. We also weighed the issues in the opposition that Dr. Hafen did not notify Mr. Ratty that the certificate of health care provided by Dr. Skinner was in any manner insufficient as required by the regulations. Thank you. Thank you, Mr. Chairman. Okay. Mr. Cardinals, next amendment.
judges: Beezer, Kozinski, Carney